UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KHA'WANN LAMAR, <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL and CHARLES WILSON, <br><br> Defendants. | CAUSE NO. 3:21-CV-403-MGG |

OPINION AND ORDER

Kha'wann LaMar, a prisoner without a lawyer, is proceeding in this case on two claims: (1) "against Lieutenant Charles Wilson in his personal capacity for money damages for placing him in a cell in 300 West containing feces and an excessive amount of dirt in April 2021 in violation of the Eighth Amendment," and (2) "against Warden Ron Neal in his official capacity for injunctive relief related to his ongoing need for sanitary living conditions[.]" ECF 8 at 4. Warden Neal filed a motion for summary judgment, arguing the claim against him is now moot. ECF 51. LaMar filed a response, conceding his claim against Warden Neal is now moot. ECF 69. LaMar then filed a motion for summary judgment on his claim against Lt. Wilson. ECF 70. Lt. Wilson filed a response, and LaMar filed a reply. ECF 73, 79. Lt. Wilson also filed a cross motion for summary judgment, arguing he did not violate LaMar's Eighth Amendment rights. ECF 75. LaMar filed a response, and Lt. Wilson filed a reply. ECF 80, 81, 83. All three summary judgment motions are now ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

*Injunctive relief claim against Warden Neal*

LaMar is proceeding against Warden Neal "for injunctive relief related to his ongoing need for sanitary living conditions," based on his allegation he was exposed to unsanitary conditions in Cell 310 West at Indiana State Prison. ECF 8 at 2, 4. Warden Neal argues this claim is now moot because LaMar has been transferred out of Cell 310 West and into an entirely different housing unit. ECF 52 at 3-4. Specifically, Warden Neal provides LaMar's deposition testimony that he was transferred in December 2021 to a different housing unit, where he has no current complaints with the sanitary conditions of his cell. ECF 53-1 at 37, 49. In his response, LaMar agrees this claim is now

2

moot because the conditions of his current housing assignment are safe and sanitary. ECF 69. Therefore, because the undisputed facts show LaMar's claim against Warden Neal is now moot, this claim must be dismissed. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); *see also Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) ("For a case to be justiciable, a live controversy must continue to exist at all stages of review, not simply on the date the action was initiated.").

*Deliberate indifference claim against Lt. Wilson*

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided

3

> not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Lt. Wilson provides an affidavit from Deborah Taylor, the Safety Hazard Manager at ISP, who attests to the following facts: In early 2021, a series of events at ISP led to a mass shakedown and lockdown of all inmates at the facility. ECF 75-3 at 1. Staff from various IDOC facilities came to assist in a mass property purge to remove possible contraband and dangerous items from cells. *Id.* As part of this mass move, inmates were removed from their cells, the cell was cleaned, property was removed, and maintenance of the cell was performed. *Id.* Then, either a new inmate would move into the cleaned cell or an inmate would return back to his original cell. *Id.* at 2. After the shakedown, the entire facility was put on lockdown. *Id.*

During the lockdown, inmates were not permitted to move in or out of their cells, including the offender biohazard crew that might otherwise have undertaken cleaning bodily fluids out of cells. ECF 75-3 at 2. Instead, inmates were responsible for cleaning and maintaining their own cells at that time. *Id.* Between May 6 and May 8, 2021, cleaning supplies were distributed to inmates in D-Cell House to clean their own cells. *Id.* The cleaning supplies included a mop, gloves, water, cream cleanser, and a disinfectant. *Id.* On May 8, 2021, Lt. Wilson sent Ms. Taylor an email informing her he

4

had distributed cleaning supplies to all remaining cells in D-Cell House. *Id.* Because LaMar does not dispute these facts, the court accepts them as undisputed.[1]

LaMar testified at his deposition to the following facts: On April 29, 2021, LaMar and other inmates were informed there would be a mass shakedown of inmates in the D-Cell House, during which all inmates would be temporarily transferred to new cells. ECF 75-1 at 19-20. Before LaMar was transferred to his new cell, he personally spoke with Lt. Wilson at his cell and asked him if the new cells were going to be cleaned, and Lt. Wilson responded the cells were being cleaned. *Id.* at 20, 43. That was LaMar's last conversation with Lt. Wilson that day. *Id.* at 25, 43. Other ISP staff escorted LaMar to his new cell. *Id.* at 24-25. When LaMar arrived at his new cell, he observed it was filled with dust and had feces smeared on the wall and ceiling. *Id.* at 29-30. LaMar informed a night-shift correctional officer about the unsanitary condition in his cell and the correctional officer responded he would try to get biohazard, but nobody came. *Id.* at 25. The next day, LaMar spoke to Lt. Wilson while Lt. Wilson was two floors below in the cellhouse and asked Lt. Wilson if biohazard could come and "help out" the "whole range," because "everybody's cells were disgusting." *Id.* at 25-27. Lt. Wilson responded that biohazard was not allowed in the D-Cell House. *Id.* at 27. LaMar next spoke with Lt. Wilson three or four days later, when Lt. Wilson informed LaMar and some other prisoners he had tendered his resignation from prison staff. *Id.* at 26, 43. LaMar requested cleaning supplies from prison staff on several occasions, but never personally

---

[1] LaMar argues Ms. Taylor's affidavit is not admissible because she attests to matters outside of her personal knowledge, as she was not physically present at D-Cell House on April 29, 2021. ECF 81 at 8-9. But Ms. Taylor attests only to matters in her personal knowledge as the Safety Hazard Manager of ISP.

5

requested cleaning supplies from Lt. Wilson. *Id.* at 28-29. LaMar was not willing to clean the feces in his cell with cleaning supplies because he did not have the training or equipment provided to the biohazard crew. *Id.* at 33-35. Because neither party disputes these facts, the court accepts them as undisputed.

Lt. Wilson argues summary judgment is warranted in his favor because there is no evidence he was personally aware of or deliberately indifferent to any unsanitary conditions in LaMar's cell. ECF 76 at 8-11. Here, LaMar testified that he spoke with Lt. Wilson on three occasions. First, LaMar spoke with Lt. Wilson on the morning of the shakedown, before he had been transferred to his new cell. Second, LaMar spoke with Lt. Wilson the morning after the shakedown, while Lt. Wilson was two floors below LaMar's cell. LaMar asked Lt. Wilson if biohazard could come help out the whole range because all of the cells were disgusting, and Lt. Wilson responded that biohazard was not allowed in D-Cell House during the lockdown. Third, LaMar spoke with Lt. Wilson three or four days later, when Lt. Wilson informed him he had tendered his resignation from prison staff. There is no evidence that, during any of these three conversations, Lt. Wilson was ever physically present at LaMar's new cell or ever observed or was informed of the specific unsanitary conditions in his cell.

In his response, LaMar argues he did make Lt. Wilson aware of the unsanitary conditions in his cell and the need to have biohazard come to his cell. ECF 80 at 3, ECF 81 at 2. But LaMar supports this assertion only by citing to his own deposition testimony that he spoke with Lt. Wilson while he was on a lower floor in the cellhouse and requested that biohazard come help clean all the cells on the range, as all of the cells

6

were "disgusting." LaMar provides no evidence that Lt. Wilson ever observed or was ever informed of the specific conditions in his cell, including that his cell contained dust and feces on the walls. While LaMar did request that Lt. Wilson have biohazard come to the range, Lt. Wilson was not deliberately indifferent for responding that biohazard was not allowed in the D-Cell House, as Lt. Wilson knew the biohazard crew was not available during the lockdown and inmates were instead being supplied with cleaning supplies to clean their own cells. There is no evidence Lt. Wilson denied LaMar access to, or knew LaMar was being denied access to, any cleaning supplies. Thus, because there is no evidence that (1) Lt. Wilson was aware of the specific unsanitary conditions in LaMar's cell, or (2) Lt. Wilson had any reason to believe LaMar was being denied access to cleaning supplies, there is no evidence by which a reasonable jury could conclude Lt. Wilson knew LaMar was at serious risk of being harmed and did nothing to prevent that harm from occurring. *See Board*, 394 F.3d at 478; *see also Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."). Without more, LaMar fails to present a genuine issue of material fact as to essential elements of his claim of deliberate indifference against Lt. Wilson, and summary judgment is therefore warranted in favor of Lt. Wilson and against LaMar.

    For these reasons, the court:

    (1) DISMISSES Kha'wann LaMar's claim for injunctive relief against Warden Neal;

    (2) DENIES Kha'wann LaMar's motion for summary judgment (ECF 70);

(3) GRANTS Lt. Wilson's motion for summary judgment (ECF 75); and

(4) DIRECTS the clerk to enter judgment in favor of Lt. Wilson and against Kha'wann LaMar and to close this case.

SO ORDERED on July 28, 2023

                                                   s/Michael G. Gotsch, Sr.
                                                   Michael G. Gotsch, Sr.
                                                   United States Magistrate Judge